IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:18-CR-00378 |
| | : | (JUDGE MARIANI) |
| JARRETT EDMONDS | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Jarrett Edmonds' objection to the Pre-Sentence Report's ("PSR") finding that he has committed two prior "crimes of violence" such that he now qualifies as a career offender for purposes of sentencing.

On November 13, 2018, Defendant Edmonds was indicted by a federal grand jury for Possession with Intent to Distribute Heroin, Fentanyl and Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Doc. 1). Defendant thereafter pleaded guilty on May 3, 2019, pursuant to a signed plea agreement.

The PSR in this case indicates that Edmonds' base offense level for a violation of 21 U.S.C. § 841(a)(1) is 12 because the minimum offense level from the drug quantity table for Schedule I or II opiates is 12. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(14). However, the PSR in paragraph 23 adds an enhancement for career offender status, raising the offense level to 34. The basis for the enhancement is that Defendant was at least 18 years old at the time of the instant offense of conviction, the instant offense of conviction is a crime of violence or a controlled substance offense and the defendant has

two prior felony convictions of either a crime of violence or a controlled substance offense. Paragraph 23 of the PSR cites to paragraphs 28 and 41. Paragraph 28 is a conviction in Bergen County, New Jersey, for aggravated assault in 2001 and Paragraph 41 is a conviction in 2014 for possession with intent to deliver a controlled substance in Luzerne County, Pennsylvania.

The offense level for a career offender under this analysis becomes 34 because the statutory maximum term of imprisonment in this case is 25 years or more. *See* U.S.S.G. § 4B1.1(b)(2).

This Court held a sentencing hearing on March 12, 2020. At that hearing, counsel for the Defendant objected to the recommendation in the PSR that Edmonds be deemed a career offender and be sentenced accordingly (*see* First Addendum to PSR, Doc. 44). Defense counsel also previously submitted a sentencing memorandum to the Court setting forth this objection. (Doc. 66). Specifically, Defendant asserts that the New Jersey conviction for aggravated assault does not qualify as a crime of violence.

Prior to the hearing, Government counsel submitted a sentencing memorandum (Doc. 69) opposing the Defendant's objection and arguing that Edmonds' aggravated assault conviction under the law of New Jersey constitutes a crime of violence under the enumerated offense clause of U.S.S.G. § 4B1.2(a)(2) and elements clause of U.S.S.G. § 4B1.2(a)(1) so that Defendant Edmonds qualifies as a career offender (*id.* at 7).

The Court heard argument from counsel on Defendant's objection to the PSR's recommendation that he be deemed a career offender at the sentencing hearing on March 12, 2020.  At the conclusion of the parties' arguments, the Court determined that it would issue a written opinion on the issue in question before the sentencing hearing would be resumed.

After careful consideration of the parties' arguments and consideration of the case law in this difficult and developing area of the law, the Court finds that Defendant Edmonds' prior conviction for aggravated assault does not qualify as a "crime of violence" under either the elements clause or the enumerated offense clause of § 4B1.2(a) and that accordingly, the Defendant may not be sentenced as a career offender.

Pursuant to § 4B1.2, the term "crime of violence" is defined as follows:

(a) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for term exceeding one year, that –
   1. Has as an element the use, attempted use, or threatened use of physical force against the person of another, or
   2. Is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. §841(c).

U.S.S.G. § 4B1.2(a)(1)-(2).

In this case the issue is whether Defendant Edmonds' conviction for aggravated assault constitutes a crime of violence under § 4B1.2(a) such that it, together with his prior controlled substance conviction, which is not at issue, renders him a career offender under § 4B1.1 and thus subject to the offense level enhancement from 12 to 34.

This issue was addressed by the Ninth Circuit in *United States v. Alberto Garcia-Jiminez*, 807 F.3d 1079 (9th Cir. 2015). There, Defendant Garcia-Jiminez pleaded guilty to illegal reentry into the United States. At sentencing, the district court increased his base offense level because of a prior aggravated assault conviction in New Jersey, which the district court concluded constituted a categorical "crime of violence" under U.S. Sentencing Guidelines § 2L1.2 (Unlawfully Entering or Remaining in the United States). This increased the base level for illegal reentry by 16 levels. The Ninth Circuit vacated and remanded the case, holding that "the provision of the New Jersey statute under which Garcia-Jiminez was convicted does not qualify as federal generic aggravated assault and therefore is not a 'crime of violence.'" 807 F.3d. at 1081.

As the Circuit explained,

> Garcia-Jimenez is a citizen of Honduras. In 2009, he was arrested in New Jersey and indicted on several counts arising from an incident in which, after getting into an argument while drunk during a card game, he stabbed another card player. He pled guilty to aggravated assault, count one of the indictment, which charged that he "attempt[ed] to cause serious bodily injury ... and/or [ ] purposely or knowingly cause[d] serious bodily injury ... and/or under circumstances manifesting extreme indifference to the value of human life, [ ] recklessly cause[d] serious bodily injury to [another.]" The language of the indictment closely tracked the New Jersey aggravated assault statute, which reads: "A person is guilty of aggravated assault if he: ... [i] Attempts to cause serious bodily injury to another, or [ii] causes such injury purposely or knowingly or [iii] under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury...." N.J. Stat. Ann. § 2C:12–1(b)(1). Documents from the New Jersey proceedings do not specify which of the three prongs of the New Jersey statute Garcia-Jimenez was convicted of violating.

*Id.*

The Circuit compared the elements of the New Jersey provision under which Garcia-Jimenez was convicted with the elements of the federal generic definition of aggravated assault, and "conclude[d], for two independent reasons, that the two are not a categorical match." *Id.* at 1084 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

Garcia-Jimenez contended that New Jersey law punishes an individual for aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury. . .", N.J. Stat. Ann. § 2C:12-1(b)(1), and that this provision is broader than the federal generic definition of aggravated assault because it punishes conduct committed with a mental state of extreme indifference recklessness whereas the federal generic definition of aggravated assault requires the defendant to have acted with a more culpable mental state – with knowledge, purpose or intent. *Garcia-Jimenez*, 807 F.3d at 1084.

After conducting the comparison of the New Jersey statute to the generic federal definition of aggravated assault, the Ninth Circuit stated:

> After conducting the proper analysis, we conclude that a mens rea of extreme indifference recklessness is *not* sufficient to meet the federal generic definition of aggravated assault. Thirty-three states and the District of Columbia do not punish as aggravated assaults offenses committed with only extreme indifference recklessness. In addition, the common law definition of assault, a general intent offense that requires a showing of willfulness, has been incorporated into the federal offense of assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6). *See United States v. Loera*, 923 F.2d 725, 727-28 (9th Cir. 1991).

Seventeen states and the Model Penal Code do punish aggravated assaults committed with extreme indifference recklessness (or a lesser level of mens rea).

That a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit aggravated assault is a compelling indication that the federal generic definition of aggravated assault *also* requires more than that mental state. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1153 (9th Cir. 2008) (en banc), overruled on other grounds as recognized by *United States v. Rivera-Constantino*, 798 F.3d 900, 904 (9th Cir. 2015) (describing 35 states as "the vast majority of states" for the purposes of the *Taylor* analysis); *Esparza-Herrera*, 557 F.3d at 1025 (holding that 33 jurisdictions is a sufficient consensus to establish the federal generic definition of a crime).

*Id.* at 1085-1086 (emphasis in original).

Further, while the Court noted that the Model Penal Code "does point in the opposite direction, . . . we have emphasized, the Model Penal Code, while a helpful tool in the categorical analysis, does not dictate the federal generic definition of a crime." *Id.* at 1086.

Because the New Jersey provision under which Garcia-Jimenez was convicted punishes conduct committed with only extreme indifference recklessness, the New Jersey definition of aggravated assault is broader than the federal definition. Consequently, the district court should not have applied the crime-of-violence enhancement to Garcia-Jimenez's sentence.

*Id.* at 1087.

The Ninth Circuit's decision that the Model Penal Code does not govern in determining what constitutes the federal generic definition of a crime is in accord with the Third Circuit's decision in *United States v. Graves* where the Third Circuit stated:

We agree with the Sixth Circuit and the Ninth Circuit in their reading of *Taylor*, and hold today that the most important factor in defining the generic version of an offense is the approach of the majority of state statutes defining the crime.

> Affording predominant weight to the majority of states best recognizes that "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity." While the MPC is a useful starting point, its definition of "robbery" does not supersede the way in which the majority of states have defined that offense.

877 F.3d. 494, 504 (3d Cir. 2017).

Similarly, in *United States v. Barcenas-Yanez*, 826 F.3d 752 (4th Cir. 2016), the Fourth Circuit held that the Texas aggravated assault statute under which an illegal reentry defendant was previously convicted, which set out alternative means of satisfying the mens rea requirement, did not render it "divisible" and thus did not permit the sentencing court to utilize the modified categorical approach in deciding whether the prior conviction was for a crime of violence. The Court found that under the categorical approach, the aggravated assault which was committed under a statute that permitted the offense to be committed recklessly, did not qualify as a "crime of violence." The Circuit made clear that the Texas statute's stated alternative means of satisfying the mens rea element for aggravated assault did not render the statute divisible.

> We think that the district court and the parties are correct on that score; inclusion of a mere reckless state of mind renders the statute broader than the generic offense. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1086 (9th Cir. 2015) ("That a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit aggravated assault is a compelling indication that the federal generic definition of aggravated assault also requires more than that mental state."). Therefore, and again as the district court correctly perceived, the dispositive question becomes whether the Texas legislature, in setting out alternative means of satisfying the mens rea element of the Texas statute, rendered the statute divisible such that the state law can be said to have created <u>two offenses</u>, one involving a reckless mens rea, the

other involving a knowing or intentional mens rea. We hold, applying settled Circuit precedent, that the answer to this latter query is "no."

*Id.* at 756-757 (underline in original).

The Court found that the mere use of the disjunctive "or" in the definition of a crime does not automatically render it divisible. "Only when the law requires that in order to convict a defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative elements and not alternative means." *Id.* at 757.

The Court thereafter found that the Texas aggravated assault statute "is broader than the federal generic 'aggravated assault' offense qualifying under the reentry guideline as supporting an enhanced sentencing range, is not divisible and therefore cannot support the application of a 16 level enhancement under the reentry guideline." *Id.* at 758.

Most recently, the District Court for the District of New Jersey, in *United States v. Randolph*, 2019 WL 2067542 (D.N.J. 2019), addressed the same aggravated assault statute at issue in this case that is codified at New Jersey Statute § 2C:12-1(b)(7). The Court noted that the statute "contains different *mens rea* alternatives, but does not 'set forth several different crimes.'" *Id.* at *3. The Court thus applied the "categorical approach" and looked "only to the elements of the New Jersey aggravated assault statute in evaluating whether Defendant's prior conviction was for a 'crime of violence.'" *Id.* (citing *United States v. Hedgeman*, 2018 WL 534156, at *3 (D.N.J. 2018); *Barcenas-Yanez*, 826 F.3d at 758).

The District Court analyzed this issue under the "elements clause" of U.S.S.G § 4B1.2(a)(1) and under the enumeration clause of § 4B1.2(a)(2).

"In the context of determining whether an offense qualifies as a 'crime of violence' under the elements clause, 'a court simply asks' whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense.'" *Randolph*, 2019 WL 2067542, at *3 (quoting *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014)). "'If the statute has this element, or defines the crime more narrowly, then the offense can serve as a predicate offense.'" *Id.* (quoting *United States v. Chapman*, 866 F.3d 129, 134 (3d Cir. 2017)) (internal quotation marks omitted). However, "if the state statute 'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." *Id.* (quoting *Brown*, 765 F.3d at 189).

The District Court in *Randolph* also quoted *Popal v. Gonzalez*, 416 F.3d 249, 254 (3d Cir. 2005) for the proposition that "[i]t is now settled law in this Circuit that an offender has committed a 'crime of violence' . . . only if he acted with an intent to use force." 2019 WL 2067542, at *3.

In sum, with respect to the elements clause of § 4B1.2(a)(1) of the Sentencing Guidelines, the district court in *Randolph* held that established Third Circuit law provides that "an offender has committed a 'crime of violence' only if he acted with an intent to use

force.  As such, Defendant's conviction for aggravated assault, which permitted conviction for mere reckless conduct, is not a 'crime of violence' under the elements clause of the Guidelines." *Id.* at *7.

With respect to the enumerated offense clause of § 4B1.2(a)(2), the *Randolph* court rejected the Government's argument that, because aggravated assault is one of the offenses listed under the enumerated offense clause, the defendant's prior conviction for aggravated assault qualifies as a "crime of violence" under that subsection.  *Id.* at *9.  The Court reasoned:

> Under the enumerated offense clause, a court compares a state offense to the modern "generic" view of the offense, "roughly corresponding to the definitions of [those listed enumerated offenses] in a majority of the States' criminal codes," "regardless of technical definitions and labels under state law." *Taylor v. United States*, 495 U.S. 575, 589 (1990) (discussing enumerated offense of burglary). If the state offense criminalizes more conduct than the generic offense, then it does not qualify as a predicate crime of violence. *See United States v. Mathews*, 453 F.3d 830, 833 n.7 (7th Cir. 2006).
>
> Here, there is no dispute that a substantial majority of state jurisdictions require more than extreme indifference recklessness to commit aggravated assault. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1086 (9th Cir. 2015) . . . Relying on the majority of states' approach, a number of courts have found that aggravated assault statutes that allow for conviction for reckless conduct are not "crimes of violence" under the enumerated offense clause; in fact, in *Garcia-Jimenez*, the Ninth Circuit specifically concluded that the same broad New Jersey aggravated assault statute at issue here, N.J.S.A. 2C:12-1(b)(1), was broader than the generic definition of the offense. *Id. See also United States v. Simmons*, 917 F.3d 312, 318 (4th Cir. 2019), as amended (Mar. 6, 2019) (state aggravated assault charge that "can be committed with a *mens rea* equal to or less than recklessness, the crime is categorically broader than the generic offense of aggravated assault and cannot be deemed a 'crime of violence' under the [enumerated offense clause of the] Sentencing Guidelines"); *Barcenas-Yanez*, 826 F.3d at 756 ("[I]nclusion of a mere reckless state of mind

[in Texas aggravated assault statute] renders the statute broader than the generic offense.").

However, the Government argues that subsection (b)(7) is a near-verbatim recitation of the Model Penal Code's definition of aggravated assault, which states that a person commits aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." Model Penal Code § 211.1(2). Although the Model Penal Code can serve as an aid in determining the generic definition of a crime, the Third Circuit has definitively held that when there is a conflict between the Model Penal Code definition and the body of state law, the "the most important factor in defining the generic version of an offense is the approach of the majority of state statutes defining the crime." *United States v. Graves*, 877 F.3d 494, 503-04 (3d Cir. 2017).

*Randolph*, 2019 WL 2067542, at *7-8.

Finally, the District Court concluded:

Thus, although aggravated assault is specifically listed in the enumerated offense clause, because the majority of states' aggravated assault statutes require a *mens rea* greater than extreme indifference reckless, the enumerated offense clause does not apply to Defendant's conviction. Accordingly, because Defendant's prior conviction does not qualify as a "crime of violence" under either the elements clause or the enumerated offense clause, the Court does not assign Defendant the heightened base-offense level under § 2K2.1(a)(4)(A).

*Id.* at *8.

This Court finds the reasoning in *Randolph*, and its case citations therein, persuasive.

However, although the Court agrees with the conclusion and much of the reasoning of *Randolph*, the Court also notes the Third Circuit's decision in *United States v. Abdullah*, 905 F.3d 739 (3d Cir. 2018), which is not cited in *Randolph*. In *Abdullah*, the Third Circuit

held that New Jersey's aggravated assault statute is divisible. 905 F.3d at 745. As the

Court explained in *Abdullah*:

> Here, the New Jersey aggravated assault statute, § 2C:12-1(b), is divisible on its face because it proscribes three alternative degrees of conduct, each subject to different maximum sentences. *See* N.J.S.A. § 2C:12-1(b) (classifying various subsections as crimes of either the second, third, or fourth degree); *id.* § 2C:43-6(a) (providing the different maximum terms of imprisonment for crimes of the second, third, and fourth degree). The second-degree, third-degree, and fourth-degree aggravated assault offenses are thus separable forms of aggravated assault under New Jersey law.
>
> The statute is further divisible into a number of different third-degree aggravated assault offenses. New Jersey used disjunctive language to establish alternative elements of third-degree aggravated assault, including subsection (b)(2). "[E]ach subsection ... criminalizes different conduct and sets forth different (albeit overlapping) elements that must be proven beyond a reasonable doubt." [*United States v.*] *Ramos*, 892 F.3d [599, 609 (3d Cir. 2018)]; *see also* New Jersey Model Jury Charges (Criminal), "Aggravated Assault" (N.J.S.A. § 2C:12-1(b)) (detailing the different elements for various aggravated assault subsections). Section 2C:12-1(b) is thus divisible and resort to the modified categorical approach is appropriate.

*Id.* at 745-746.

Since the Court in *Abdullah* held that New Jersey's third-degree aggravated assault

statute was divisible on its face, it applied the "modified categorial approach" under which,

the Court noted:

> . . . we are permitted to look beyond the statute of conviction to documents such as "the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judgment to which the defendant assented'" to identify the specific statutory provision that served as the basis for the defendant's earlier conviction. [*Ramos*, 892 F.3d] at 607 (quoting *United States v. Brown*, 765 F.3d 185, 189-90 (3d Cir. 2014) (quoting *Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205

(2005))). Once the specific provision is identified, the categorical approach is then applied to that provision.

*Id.* at 745.

In this case, Defendant Edmonds was convicted of the crime of third-degree aggravated assault under New Jersey statute § 2C:12-1(b)(7) which provides that a person is guilty of aggravated assault if the person:

> Attempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury. . . .

N.J.S.A. § 2C:12-1(b)(7).

As recognized in *Abdullah,* the crime set forth in New Jersey statute § 2C:12-1(b)(7) can be committed with a *mens rea* of recklessness "under circumstances manifesting extreme indifference to the value of human life."  To be sure, § 2C:12-1(b)(7) is violated when a person attempts to cause significant bodily injury "purposely or knowingly" as well. However, consistent with *Shepard v. United States*, as cited in *Abdullah*, here the Court may look to certain documents beyond the statute of conviction.  But the documents presented to this Court with respect to Defendant Edmonds' aggravated assault conviction in New Jersey upon which the PSR relied in determining that Defendant qualified as a career offender, do not permit the Court to identify the specific *mens rea* of the aggravated assault charge in which Edmonds engaged or to which he pleaded guilty.

Here, the indictment of Defendant Edmonds in the Superior Court of New Jersey, Bergen County, charged that Edmonds, "in the course of committing an unlawful taking of a motor vehicle . . . did inflict bodily injury upon Macancela Luoiza, who was a person in possession or control of the motor vehicle and/or did use force upon Macancela Luoiza, . . . and/or did threaten Macancela Luoiza . . . with immediate bodily injury and/or did purposely or knowingly put Macancela Luoiza, . . . in fear of immediate bodily injury, contrary to the provisions of N.J.S.A. 2C:15-2."

The charge against Defendant Edmonds, however, was converted in the judgment of conviction to aggravated assault third-degree under § 2C:12-1(b)(7). The judgment of conviction says nothing with respect to the requisite *mens rea* element of the offense to which Edmonds pleaded guilty.

Similarly, the plea form executed by Mr. Edmonds likewise does not address the specific elements of the offense to which Defendant Edmonds pleaded guilty under New Jersey Statute 2C:12-1(b)(7).[1]

Thus, as explained in *Randolph*, because a majority of states' aggravated assault statutes require a *mens rea* greater than extreme indifference recklessness, neither the enumerated offense clause nor the elements clause of U.S.S.G. § 4B1.1(b)(1)(2) apply to Edmonds' aggravated assault conviction.

---

[1] The indictment, plea form, and judgment of conviction referenced herein will be placed of record with this opinion.

14

This is not a case like *United States v. Horton*, 461 F.App'x 179 (3d Cir. 2012),

where a transcript of the Defendant's plea hearing indicated that Horton, when asked by the

Court during his plea colloquy for third degree aggravated assault to state what happened,

answered the Court as follows:

> THE COURT: Now, Mr. Horton, you're still under oath, of course. Would you like to continue with what happened or what resulted and what your intent was, et cetera?
>
> A.   I hit him in the face. I made his nose bleed. I – I intended to do it.
>
> Q.: Just for the record. So, Mr. Horton, you are saying that when you – when you hit him, you caused his nose to bleed? Is that correct?
>
> A.   Yes.

461 F.App'x, at 182.

In *Horton*, the Defendant argued that under New Jersey Statute § 2C:12-1(b)(7), that

statute may be violated with a *mens rea* of recklessness which would not constitute a "crime

of violence." *Id.* at 183. But the Third Circuit rejected that contention stating that "the plea

colloquy makes explicit that Horton 'intended' to hit his victim, and thus, he acted 'purposely

or knowingly' rather than recklessly." *Id.* The Court therefore determined that Horton's

"predicate conviction for intentional third-degree aggravated assault was a 'crime of

violence', and he was properly sentenced by the District Court pursuant to U.S.S.G.

§2K2.1(a)(2)."[2] *Id.* at 184.

---

[2] Section 2K2.1 is defined by cross-reference to U.S.S.G. §4B1.2(a), with respect to the definition of a "crime of violence." See *Horton*, 461 F.App'x at 180.

*Horton* arose in the circumstance where his aggravated assault judgment did not specify which subsection of the aggravated assault statute he was convicted of violating and there was no charging document in the record that specified the subsection. Here, while § 2C:12-1(b)(7) of the New Jersey statute is set forth in the judgment of conviction, the specific *mens rea* element for Edmonds' conviction is not stated. In addition, unlike in *Horton*, there is no statement by Edmonds in the plea colloquy which would permit a determination of the mental element of his conviction.

Furthermore, here, the PSR states only the following with respect to Edmonds' aggravated assault conviction at issue:

> On September 17, 2000, Jarrett Edmonds and another individual approached a male in a parking lot at 241 Main Street, Elmwood Park, New Jersey and demanded the male's vehicle. The victim placed his car key in his pocket and was subsequently assaulted by Jarrett Edmonds and the other individual.

(Doc. 43, ¶ 28). *See United States v. Volek*, 796 F.App'x. 123, 125 (3d Cir. 2019) ("A divisible statute calls for us to use the modified categorical approach to determine whether Volek's convictions are predicate offenses under the Guidelines. Instead of submitting the typical *Shepard* documents at sentencing, the government produced only Volek's PSR to clarify the nature of his prior convictions. We have previously held that a court can look to a presentence report if a defendant did not challenge the descriptions of the factual accounts within it.").

Thus, neither the *Shepard* documents nor the PSR offers any basis to allow the

Court to conclude that Edmonds acted with any mental state other than the minimum

necessary for conviction under § 2C:12-1(b)(7).

The Government, in opposition to Edmonds' position, also argued at the March 12,

2020, hearing before this Court that the Supreme Court's decision in *Voisine v. United*

*States*, 136 S.Ct. 2272 (2016), is directly applicable to the present case.

The Supreme Court characterized the question before it in *Voisine* as "whether

misdemeanor assault convictions for reckless (as contrasted to knowing or intentional)

conduct trigger the statutory firearms ban." 136 S.Ct. at 2276. The Court held that such

convictions for reckless misdemeanor assault do trigger the statutory firearms ban. The

Court summarized its holding as follows:

> In sum, Congress' definition of a "misdemeanor crime of violence" contains no
> exclusion for convictions based on reckless behavior. A person who assaults
> another recklessly "use[s]" force, no less than one who carries out that same
> action knowing or intentionally.

*Id.* at 2280.

However, the Supreme Court explicitly limited this holding, stating that "§

921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts

have sometimes given those two statutory definitions divergent readings in light of

differences in their context and purposes, and we do not foreclose that possibility with

respect to their required mental states." *Id.* at 2280 n.4. Thus, the Supreme Court

expressly declined to rule upon the question of whether the reckless use of force would be

sufficient to meet the requirements of other statutes such as the Armed Career Criminals Act, U.S.C. §16(a), a statute "with an elements clause that substantively mirrors the Sentencing Guidelines." *See Randolph*, 2019 WL 2067542 at *4.

At the hearing, the Government further advanced the Third Circuit's decision in *Baptiste v. Attorney General*, 841 F.3d 601 (3d Cir. 2016), in support of its position.

In *Baptiste,* the petitioner sought review of the decision of the Board of Immigration Appeals ("BIA") ordering his removal as an alien convicted of an "aggravated felony" pursuant to 8 U.S.C. §1227(a)(2)(A)(iii) which is defined, *inter alia*, as a "crime of violence" under 18 U.S.C. §16. The Court concluded that Baptiste's second-degree aggravated assault conviction was for a crime of violence pursuant to § 16(b) but further found that the definition of crime of violence in § 16(b) was unconstitutionally vague after *Johnson v. United States*, 135 S.Ct. 2251 (2015).

Baptiste was convicted of second-degree aggravated assault pursuant to New Jersey Statute § 2C:12-1(b)(1). That statute provides that a "person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life, recklessly causes such injury." The Circuit noted that the administrative record gave no indication of which mental state in the statute Baptiste pleaded guilty to possessing, i.e., purpose, knowledge or recklessness. *Baptiste*, 841 F.3d at 604. The Court observed, based on its review of "pertinent case law", that "there is a wide array of

18

conduct for which a defendant can be convicted for reckless second-degree aggravated assault." *Id.* at 611.  It subsequently determined that:

> Because we conclude that reckless second-degree aggravated assault does, in the ordinary case, present a substantial risk of the intentional use of force, reckless second-degree aggravated assault in New Jersey is categorically a crime of violence pursuant to § 16(b).

*Id.* at 615.

This Court finds that the decision in *Baptiste* has insufficient application to an analysis of whether Jarrett Edmonds is a career offender.  The decision in *Baptiste* preceded the Third Circuit's decision in *United States v. Abdullah, supra,* which held that New Jersey's third-degree aggravated assault statute was divisible on its face so that the modified categorical approach applied to determine whether a defendant's prior conviction under that statute section qualified as a predicate crime of violence for career offender determination.  *Baptiste* employed the categorical approach in determining whether the defendant's conviction was for a crime of violence.  This approach is at variance with the Circuit's subsequent decision in *Abdullah* which held that the third-degree aggravated assault statute was divisible on its face.  In addition, the Court in *Baptiste* found that the definition of crime of violence in § 16(b) was unconstitutionally vague after *Johnson v. United States,* thereby weakening the application of that decision to the present facts.

The Court in *Randolph* applied the categorical approach rather than the modified categorical approach in reaching its conclusion that the defendant's prior conviction did not qualify as a crime of violence because § 2C:12-1(b)(7) does not require a *mens rea* greater

than extreme indifference recklessness. *Abdullah* notes that "[o]nce the specific provision is identified, the categorical approach is then applied to that provision." *Abdullah*, 905 F.3d at 744. Thus, *Randolph* can be reconciled with *Abdullah* since the New Jersey statute at issue has been held to be divisible in *Abdullah* and the categorical approach may be applied to the specific subsection of the statute under review.

Further, Abdullah's conviction was under New Jersey statute § 2C:12-1(b)(2) for third-degree aggravated assault with a deadly weapon, *see Abdullah*, 905 F.3d at 749 ("We therefore hold that a conviction for third-degree aggravated assault with a deadly weapon under New Jersey law, § 2C:12-1(b)(2), is categorically a crime of violence under the elements clause of the guidelines.").

For the afore-discussed reasons, because New Jersey statute § 2C:12-1(b)(7) can be violated based on extreme indifference recklessness and therefore without the *mens rea* of intent or knowledge, and because the record here does not disclose the specific *mens rea* element of Defendant Edmonds' conviction under § 2C:12-1(b)(7), a determination that he is a career offender cannot be made and Defendant's objection will be sustained.

Nonetheless, although this Court has determined that Defendant Edmonds' conviction for aggravated assault under New Jersey statute § 2C:12-1(b)(7) does not permit him to be deemed a career offender for sentencing purposes in this case, this result, though determined by this Court to be required under the applicable case law, is seemingly at odds with the reality of Edmonds' conduct giving rise to his New Jersey conviction. Thus, what

began as a prosecution for a carjacking where Edmonds was charged with having used "force" upon the person in control of the vehicle or threatening that same person with "immediate bodily injury" or "purposely or knowingly" putting that person in fear of "immediate bodily injury", ended with Edmonds' uncolloquied plea to aggravated assault under § 2C:12-1(b)(7). Can it be said that it was ever in the contemplation of the prosecution or the defendant that the defendant's plea was to be one to which, given what might be ascertained from the initial charge of carjacking as described above, the mens rea of "intentional" or "knowing" applied? This the Court cannot know, although it is indeed difficult for this Court to envision a scenario where any person could engage in a reckless, as opposed to intentional, carjacking. However, this, of course, is of no consequence where the *Shepard* documents in this case are silent with respect to the specific mens rea of the defendant. Rather, these documents are distressingly formulaic. The "Plea Form" requires the defendant to circle "yes" or "no" with respect to 24 questions, answers which do not require any statement of the defendant's mental state at the time of the crime. The document does not address the issue of the specific mens rea admitted to by the defendant, if any. The judgment of conviction states only that the charge of "carjacking" was amended to aggravated assault, citing § 2C:12-1(b)(7), third degree. Could Edmonds have pleaded guilty to an intentional or knowing aggravated assault in this case? Yes, but it is of no moment under the case law since that case law admonishes courts that under the "modified categorical approach", courts are only "permitted to look beyond the statute of conviction to

21

documents such as the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judgment to which the defendant assented to identify the specific statutory provision that served as the basis for the defendant's earlier conviction." *Abdullah*, 905 F.3d at 744 (internal quotation marks omitted). Here, the charging document, plea agreement (there is no transcript of a plea colloquy), and judgment of conviction leave the Court no alternative but to attribute to the defendant "no more than 'the minimum conduct criminalized by the state statute.'" *Id.* This result is singularly unsatisfying since it leaves the Court unable to be reasonably certain that its decision squares with reality.[3] This dilemma is bluntly acknowledged by the Court in *United States v. Davis*, 875 F.3d 592 (11th Cir. 2017). There, Chief Judge Carnes, in holding that Alabama's statute defining sexual abuse by forcible compulsion does not categorically include as an element the use, attempted use, or threatened use of physical force as that term is defined under federal law stated:

> This is an ACCA "violent felony" issue case. So here we go down the rabbit hole again to a realm where we must close our eyes as judges to what we know as men and women. It is a pretend place in which a crime that the defendant committed violently is transformed into a non-violent one because other defendants at other times may have been convicted, or future defendants could be convicted, of violating the same statute without violence. Curiouser and

---

[3] This is particularly so where Defendant has not objected to the PSR's factual account giving rise to the aggravated assault conviction stating, *inter alia*, that the defendant and another individual "approached a male in a parking lot . . . and demanded the male's vehicle" and when the victim "placed his car key in his pocket [he was] . . . assaulted by Jarrett Edmonds and the other individual." (Doc. 43, ¶ 28). *See Volek*, 796 F.App'x. at 125 ("We have previously held that a court can look to a presentence report if a defendant did not challenge the descriptions of the factual accounts within it.").

curiouser it has all become, as the holding we must enter in this case shows. Still we are required to follow the rabbit.

*Id.* at 595.

For the foregoing reasons, Edmonds' objection to the PSR's finding that his prior New Jersey conviction for aggravated assault qualifies as a crime of violence and the PSR's recommendation that Defendant therefore be deemed a career offender for purposes of sentencing, will be sustained. A separate Order will follow.

__s/ Robert D. Mariani_____
Robert D. Mariani
United States District Judge